UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------X
PLUMBERS AND GASFITTERS
LOCAL UNION NO. 1,

                                   Plaintiff,

     -against-

UNITED STATES DEPARTMENT
OF THE INTERIOR,

                                  Defendant.
------------------------------------------------------------X

NOT FOR PUBLICATION
**MEMORANDUM & ORDER**
10-cv-4882 (CBA)

**AMON, Chief United States District Judge**.

*INTRODUCTION*

Defendant United States Department of the Interior ("the DOI") seeks summary judgment against plaintiff Plumbers and Gasfitters Local Union No. 1 ("the Union") on the Union's claim under the Freedom of Information Act ("FOIA" or "the Act"), 5 U.S.C. § 552. The Union seeks to compel the disclosure of "hours worked" data that was redacted from payroll forms sent in satisfaction of the Union's FOIA request. The DOI claims that the redacted data is exempted under the Act. The Court held oral argument on the parties' initial submissions on September 9, 2011. At oral argument, the Court ruled that the DOI's showing was insufficient, but allowed additional briefing. Having reviewed this briefing and the Union's response, the Court denies summary judgment and orders the DOI to produce the information sought.

*BACKGROUND*

This case concerns a FOIA request made on October 15, 2009 to the DOI for certain payroll and progress reports related to a government contract, the Gateway National Recreation Area

1

Project ("the Gateway Project"), being performed by Cutting Edge Group LLC ("Cutting Edge"). On October 26, 2009, the DOI responded to that request, providing seventy-three pages of documents, including six weeks worth of payroll forms. These payroll forms contained columns for (1) the employee's name, address, and social security number; (2) the employee's classification; (3) the number of hours worked, at both straight pay and overtime pay rates, for each day; (4) total hours worked; (5) pay rates for both overtime and straight pay; (6) gross earnings; (7) deductions for the Federal Insurance Contribution Act, state and federal withholding tax, state unemployment insurance, health insurance, and 401K contributions; and (8) net wages paid. The DOI redacted the employees' addresses and social security numbers, citing FOIA's exemption for personnel, medical, and other similar files, 5 U.S.C. § 552(b)(6), and also redacted the columns containing daily hours worked, total hours worked, deductions, and net wages, citing FOA's exemption for commercial or financial information, 5 U.S.C. § 552(b)(4).

On November 23, 2009, the Union appealed the redaction of the hours worked and net wages columns. The DOI sent the Union a letter on April 20, 2010 explaining that it had thus far been unable to review the appeal and that the Union could file suit. The Union filed this action on October 22, 2010, and now seeks only the hours worked column of data.

*DISCUSSION*

I.   *Standard of Review*

Under Federal Rule of Civil Procedure 56, a court "shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A court must "view the evidence in the light most favorable to the party opposing summary judgment, [] draw all reasonable inferences in

favor of that party, and [] eschew credibility assessments." *Amnesty Am. v. Town of W. Hartford*, 361 F.3d 113, 122 (2d Cir. 2004).

Under FOIA, an agency's decision to withhold information is entitled to no deference; review is *de novo*. 5 U.S.C. § 552(a)(4)(B). "In order to prevail on a motion for summary judgment in a FOIA case, the defendant agency has the burden of showing that its search was adequate and that any withheld documents fall within an exemption to the FOIA." *Carney v. Dep't of Justice*, 19 F.3d 807, 812 (2d Cir. 1994). These exemptions are "to be narrowly construed with all doubts resolved in favor of disclosure." *Local 3, Intern. Broth. Of Elec. Workers v. N.L.R.B.*, 845 F.2d 1177, 1180 (2d Cir. 1988). The agency may meet this burden by providing "affidavits or declarations," which are "accorded a presumption of good faith." *Id.* at 812 (internal quotations omitted). Where these declarations and affidavits are sufficient to make the required showing, the court may "forgo discovery and award summary judgment on the basis of affidavits." *Id.*

  II.  *The Requested Information Was Wrongly Withheld*

FOIA provides that a district court "has jurisdiction to enjoin [an] agency from withholding agency records and to order the production of any agency records improperly withheld from the complainant." 5 U.S.C. § 552(a)(4)(B). The Union's action here seeks to compel the disclosure of the "hours worked" column on Cutting Edge's payroll forms.[1] The DOI contends, as it did at the time it redacted, that this information falls within § 552(b)(4), which exempts "trade secrets and commercial or financial information obtained from a person and privileged or confidential."

---

[1] Although the "hours worked" column was not the only information redacted, the Union made clear at both oral argument and in their additional submission to this Court that it is the only information they seek. Union Resp. Letter Motion, DE 24, at 1-2.

3

The parties agree that the records in question were "obtained from a person." The DOI's motion thus turns on the other two elements of § 552(b)(4), which the Court analyzes in turn.

   *1. Commercial or Financial Information*

In order to rely upon the § 552(b)(6) exemption, the DOI must establish that the information withheld was "commercial or financial." In *American Airlines v. National Mediation Board*, 588 F.2d 863, 870 (2d Cir. 1978), the Second Circuit defined "commercial" to mean "pertaining or relating to or dealing with commerce." But perhaps because of the "tortured, not to say obfuscating, legislative history of the FOIA," *id.* at 865, what counts as "commercial" is not well-defined in the case law. Nor does the case law provide much guidance on the meaning of "financial."

The Union argues that the DOI has failed to establish this element because it has merely asserted that hours worked and wage data are commercial or financial "without any reliance on supporting facts, reason, or case law." Resp. at 7. The DOI responds that the information, "monies paid by a business," is commercial "[o]n its face, and without need for elaboration." Reply at 4. The Court agrees.

Little more than common sense establishes that the number of hours an employee works is commercial or financial in character. Whatever "commercial or financial" means at the margins, at its core are "records that reveal basic commercial operations, such as sales statistics, profits and losses, and inventories, or relate to the income-producing aspects of a business," *Pub. Citizen Health Research Group v. F.D.A.*, 704 F.2d 1280, 1290 (D.C. Cir. 1983). Cutting Edge, the entity whose records the Union seeks, is a commercial entity. Its business is to bid on contracts to provide certain services to the government. If a contract is awarded, Cutting Edge must pay employees to perform the services it has contracted to perform. These labor costs are an essential column on Cutting Edge's balance sheets. And because the number of hours worked is a

component of these labor costs, that information relates directly to the commerce in which Cutting Edge is engaged. Accordingly, the Court finds that the "hours worked" data is commercial or financial in nature.

   *2. Privileged or Confidential*

The remaining element of the § 552(b)(4) exemption is whether the information withheld is "privileged or confidential." Information is "confidential" under § 552(b)(4) if disclosure would "have the effect either (1) of impairing the government's ability to obtain information—necessary information—in the future, or (2) of causing substantial harm to the competitive position of the person from whom the information was obtained." *Nadler v. F.D.I.C.*, 92 F.3d 93, 96, (2d Cir. 1996). The parties agree that the first prong does not apply, *see* Mem. in Support at 5; Resp. at 9-11, so only the "competitive harm" prong is in issue.

To establish competitive harm, the DOI must show that Cutting Edge—the "person from whom the information was obtained"—faces both (1) actual competition and (2) a likelihood of "substantial" competitive injury if the information were released." *Inner City Press v. Bd. of Governors*, 380 F. Supp. 2d 211, 219 (S.D.N.Y. 2005), *aff'd* 463 F.3d 239 (2d Cir. 2006). The court "need not conduct a sophisticated economic analysis of the likely effects of disclosure," *id.* at 219 (quoting *Pub. Citizen Health Research Group.*, 704 F.2d at 1291), and courts customarily rely on a common sense approach to determining competitive harm, *see id.*; *Watkins v. U.S. Customs and Border Prot.*, No. 09-35996, 2011 WL 1709852, at *5 (9th Cir. 2011). But an agency must still, of course, provide "adequate documentation of the specific, credible, and likely reasons why disclosure of the document would actually cause substantial competitive injury." *Lee v. F.D.I.C.*, 923 F. Supp. 451, 455 (S.D.N.Y. 1996).

The Court has little trouble crediting the DOI's claim that Cutting Edge faces "actual competition," but the DOI has not demonstrated that Cutting Edge faces a likelihood of substantial competitive injury. In support of its argument, the DOI has offered two affidavits from Antonio Abrantes, the President and Managing Member of Cutting Edge. Abrantes states that "[t]here are three basic components to a bid proposal: (1) the cost of material and equipment; (2) the cost of labor; and (3) overhead/profit." Second Abrantes Aff. ¶ 4. Abrantes and DOI argue that if a competitor could determine the cost of labor on the Gateway Project, it could predict Cutting Edge's future bids and undercut them. Second Abrantes Aff. ¶ 6; DOI Letter Motion, DE 23, at 3. They claim that this is exactly what disclosure of the hours worked data would allow a competitor to do. By simply multiplying the number of hours worked by the prevailing wage, a rate of pay set by the contracting agency, a competitor could predict Cutting Edge's gross labor costs and undercut them.

The problem with the DOI and Cutting Edge's argument is that the information they claim is confidential has already been disclosed, at least insofar as it could cause competitive harm. This is because, as the Union points out, the DOI did not redact Cutting Edge's gross labor costs from the Gateway Project payroll forms. Union Resp. Letter Motion, DE 24, at 2-3; exh. A. Consequently, a competitor could get a good sense of the hours worked data by simply dividing the gross wages column by the prevailing hourly wages, which are set by the contracting government agency and contained in the payroll forms.[2] That is, any competitor could get a generalized sense of the time Cutting Edge spends on certain tasks from the information already disclosed. Since even under the DOI's theory a competitor would already have all it needs to undercut Cut-

---

[2] Of course, this raises the question why the Union seeks disclosure of that data instead of simply doing the arithmetic. The Union has voiced its suspicion that Cutting Edge is not properly compensating its employees, but the reason it seeks disclosure is irrelevant. *See Nat'l Archives and Records Admin .v. Favish*, 541 U.S. 157, 171-72 (2004) (explaining "the usual rule that the citizen need not offer a reason for requesting the information . . . .").

6

ting Edge, the Court finds it highly unlikely that further disclosure would confer any competitive advantage, let alone one resulting in "substantial" competitive injury to Cutting Edge.

The DOI has not carried its burden of justifying its refusal to disclose the "hours worked" columns on the Gateway Project payroll forms. The Court finds that the requested information was wrongly withheld. Accordingly, the Court hereby orders the DOI to turn over the data in the redacted "hours worked" columns within ten (10) days of the issuance of this Order.

## *CONCLUSION*

For the above reasons, the DOI's motion for summary judgment is denied. The DOI is ordered to produce the data in the "hours worked" columns of the Gateway Project payroll forms.

SO ORDERED.

Dated: Brooklyn, N.Y.
       October 26, 2011

/s/
Carol Bagley Amon
Chief United States District Judge